NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Civ. No. 14-3937 (KM)(JBC) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **MICHAEL BALICE, AMBOY BANK, et al.,** | |
| **Defendants.** | |

The United States has filed this action to reduce to judgment defendant Michael Balice's tax liability for several years, and to foreclose on a property at 70 Maple Avenue in Metuchen, New Jersey, currently held in trust. Now pending before the Court are two interrelated motions:

a. ECF No. 187 (government's motion for summary judgment)

b. ECF No. 191 (Balice's motion to strike premature pleadings and objection to the United States's motion for summary judgment)

For the reasons stated below, the motion of the United States for summary judgment is granted.

### I. BACKGROUND

Because I write for the parties, I assume familiarity with the numerous previous decisions in this matter. A brief overview of the pertinent facts is nevertheless helpful.[1]

---

[1]   For purposes of this opinion, citations to the record will be abbreviated as follows:

Amended Complaint (ECF No. 144) = Am. Compl.

Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (ECF No. 187-1) = Pl. Br.

## A. Transfer of the Maple Avenue Property

The Maple Avenue property was once owned by Michael Balice and his then-wife, Marion Balice (collectively, the "Balices").[2] In August of 1994, the Balices, saddled with outstanding federal income tax and other liabilities, attended a seminar given by Ronald Ottaviano that instructed attendees on how to create trusts to obtain tax benefits. (Pl. Br. 3–4) Thereafter, on August 28, 1994, the Balices executed a quitclaim deed purporting to transfer title of the Maple Avenue property—their primary residence at the time—to the Rosewater Trust ("Rosewater"). (*Id.*) The Balices did not receive consideration for the transfer. (*Id.* 3)

On August 29, 1994, the Balices applied to the IRS for an Employer Identification Number for Rosewater, listing Marion Balice as Rosewater's executor or trustee. A "certification" document dated October 5, 1994, purportedly appointed Balice as Rosewater's "Exchanger". (*Id.* 4; Pl. Exs. I–J)

---

Plaintiff's Statement of Undisputed Material Facts (ECF No. 187-3) = Pl. SUF

Amended Exhibits to Plaintiff's Motion for Summary Judgment (ECF No. 188) = Pl. Ex.

January 27, 2017 Declaration of Michael MacGillivray (ECF No. 188, Ex. A) = MacGillivray Decl.

Defendant's Objection and Opposition to Plaintiff's Motion for Summary Judgment and Motion to Strike Plaintiff's Premature Pleadings and Motion for Jury Trial (ECF No. 191) = Def. Opp. & Mot.

Exhibits to Defendant's Objection and Opposition to Plaintiff's Motion for Summary Judgment and Motion to Strike Plaintiff's Premature Pleadings and Motion for Jury Trial (ECF No. 191) = Def. Ex.

Defendant Amboy Bank's Opposition to the Plaintiff's Motion for Summary Judgment (Letter Memorandum) (ECF No. 190) = Amboy Ltr.

Plaintiff's Reply on Motion for Summary Judgment (ECF No. 195) = Pl. Reply

Defendant's 2nd Objection and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 207) = Def. 2nd Opp.

[2] Today, Marion Balice is known as Marion Meyers. For simplicity, I will continue to refer to her as Marion Balice. Unless otherwise specified, however, "Balice" means Michael Balice.

In its decision upholding the Balices' tax deficiencies for the 1997 and 1998 tax years, the United States Tax Court made the following findings concerning a checking account the Balices had opened in Rosewater's name:

i.    The Balices exercised complete control over the checking account;

ii.    All deposits into the account during 1997 and 1998 were from the Balices or "Statewide";[3]

iii.    All statements for the Rosewater checking account went to the Balice's home address;

iv.    Statewide had no economic substance and should be disregarded for tax purposes;

v.    Following transfer to Rosewater, the Balices continued to live in and exercise control over the Maple Avenue property.

(Pl. Ex. B)

Marion Balice made signed declarations in 2011 and 2015, the substance of which echoed the Tax Court's findings. She admitted that Rosewater was fictitious and set up to hold title to and protect the Maple Avenue property from federal tax and other liabilities; that no consideration was exchanged for the transfer; and that the Balices lived in the property and used personal funds to pay its expenses, post-transfer. (Pl. Br. 5; Ex. L) In connection with this litigation, Balice himself signed a declaration stating that he resided at the Maple Avenue property from 1989 to the present day, excluding his incarceration, and has paid utility bills for the property. (*Id.*; ECF No. 176 ¶¶ 1–2)

## B. Income Tax Obligations for 1998 (Count 1), 2007, and 2008 (Count VI)

The Balices filed a joint income tax return for the 1998 tax year that reported a total amount due of $7,779, which they paid in full. The Internal Revenue Service ("IRS"), however, subsequently determined that the Balices

---

[3]    According to the United States, Statewide was a second trust that the Balices established on the advice of Ottaviano. (Pl. Br. 4)

were liable for a deficiency of $32,449 as well as a penalty of $6,489.80, for the 1998 tax year, and sent the Balices a June 21, 2004 deficiency notice saying so. Balice challenged the deficiencies in Tax Court and the Tax Court upheld the deficiencies on December 10, 2009. (Pl. Ex. B, C; see ECF No. 208 p.2) Following the Tax Court decision on February 22, 2010, the IRS again assessed the Balices' 1998 taxes, concluding that they still owed $76,586. (See Am. Compl. ¶ 17; Pl. Reply 2) Those deficiencies remain largely unpaid (see Am. Compl. ¶ 19) and with penalties and interest, amount to $60,179.68 as of January 9, 2017. (Pl. Br. 2)

Balice did not file any tax return for the tax years 2007 and 2008, despite earning income by marketing products that purported to teach others how to avoid income tax by creating sham trusts. For marketing these products, a jury convicted Balice on December 21, 2011 of conspiracy to defraud the United States, wire and mail fraud, and attempt to evade income tax. (See Pl. Ex. D) Thereafter, the IRS determined Balice's tax deficiencies for 2007 and 2008, which Balice again challenged in the United States Tax Court. Again, the Tax Court upheld the deficiencies, holding that for 2007, Balice owed $35,497 in unpaid taxes and $35,049 in statutory penalties, and that for 2008, Balice owed $3,810 in unpaid tax and $1,180 in penalties. Additionally, the Tax Court imposed a $25,000 fine, under 26 U.S.C. § 6673(a), for maintaining frivolous positions during the Tax Court litigation. (Pl. Br. 3; see Pl. Ex. E–F) On Balice's appeal, the Third Circuit upheld the Tax Court's decision. (Pl. Br. 3 (citing Balice v. CIR, No. 15-2366 (3rd Cir. February 5, 2016)).

Accounting for liabilities, statutory additions, and the $25,000 penalty, Balice owes $117,337.27 for the 2007 tax year and $6,693.51 for the 2008 tax year, as of January 9, 2017. (Pl. Br. 3; MacGillivray Decl. ¶¶ 11–13)

### C. The Parties' Motions and Relevant Procedural History

By opinion and order dated July 10, 2015, I previously denied Amboy's motion for summary judgment, which argued that Amboy's HELOC mortgage lien on the Maple Avenue property has full priority over the tax lien of the United States. (*See* ECF No. 71, *United States v. Balice*, No. CIV. 14-3937 KM JBC, 2015 WL 4251146, at *9 (D.N.J. July 10, 2015) (hereinafter, "*Balice I*"), *reconsideration denied*, No. 14-3937 (KM)(JBC), 2016 WL 1178860 (D.N.J. Jan. 15, 2016). There, in *Balice I*, I determined that Amboy's lien would take priority, but only "to the extent of the outstanding balance on the home equity line of credit as of July 12, 2005, plus any additional sums advanced thereafter, but before August 27, 2005." I explained that the amount of the lien could not be determined on summary judgment, however, because the priority dollar amount depends on the outstanding loan disbursements that occurred before August 27, 2005, any reduction of that balance by repayment, and interest and fees—all issues undeveloped in the record at the time.

The parties still have not submitted evidence sufficient to establish the dollar amount of Amboy's priority. The government's motion for summary judgment, which is directed at Balice, puts off the issue: it recognizes in principle, however, that the proceeds of a foreclosure sale on the Maple Avenue property would be distributed to Amboy Bank "to satisfy those portions of Amboy Bank's lien that the Court determines, pursuant to further briefing, hold priority over federal tax liens," prior to being distributed to the United States to satisfy "the outstanding balance of the federal tax liens that attach to the property, including interest and penalties arising from such liens . . . ." (Pl. Br. 13) Therefore, the dollar amount of any such priority is not at issue on this motion; indeed the parameters of the issue depend to some degree on the issues decided here, so the parties' failure to address it definitively is understandable.

In *Balice I*, I also denied Balice's motion to dismiss and rejected Balice's argument that under principles of *res judicata*, the prior judgments for Balice's

5

tax debts for the years 1992, 1993, 1996, and 2001 bar the government from proceeding with this action. I explained that not only are different tax years at issue in this case (with respect to claims for judgment), but the government is also seeking foreclosure in this action—a type of relief it did not seek in prior actions. "Rather, those prior actions established the Balices' liability for tax assessments and entered money judgments, resulting in the attachment of tax liens to all property and rights that the Balices owned." *Balice I* at *9. There is no preclusion, I noted, even as to tax years for which debts were previously reduced to judgment, on which the United States seeks to foreclose in this action. *Id.* at *10.

Moreover, in *Balice I*, I rejected, *inter alia*, Balice's tax-protestor-style arguments that the U.S. Constitution does not give Congress the power to collect income taxes and that Congress may not delegate tax-collecting power to the IRS. *Id.* at *10–12. I rejected largely identical arguments in my opinion dated July 20, 2016. (*See* ECF No. 152, hereinafter "*Balice II*", pp. 1–2)

In that July 20, 2016 opinion, *Balice II*, I also rejected Balice's argument that the 2010 assessment of his 1998 taxes violated the three-year statute of limitations provided for in 26 U.S.C. § 6501. That statute establishes a six-year, rather than three-year, statute of limitations when a taxpayer has understated his income by more than 25%, as Balice did. 26 U.S.C. § 6501(e)(1). (*Balice II* at 3–4) Even setting aside this substantive reasoning, I held that Balice's timeliness argument was barred by *res judicata*, "having already been decided adversely to Balice in the Tax Court" in a decision that became final on February 8, 2010. (*Id.* 4)

In an opinion and order dated October 11, 2016, "*Balice III*", I rejected, *inter alia*, Balice's motion for summary judgment, and with it his argument that tax withholding in the amount of $10,162 satisfied his 1998 tax year deficiency. (*See* ECF No. 167, hereinafter "*Balice III*", at 4) I explained that Count I seeks to reduce to judgment additional amounts due for the 1998 tax year, over and above the $10,162, so Balice's argument was beside the point.

6

(*Id.*) In *Balice III,* I also, for the second time, disposed of Balice's argument that the 2010 tax assessment on his 1998 tax year income taxes was barred by the applicable statute of limitations. (*Id.* at 4–5)

Seeking to resolve all counts remaining in this action, the United States brought the motion for summary judgment that is now before me. (ECF No. 187) Filed on January 27, 2017, this summary judgment motion asks the court to (a) reduce the Balices' 1998 joint income tax and Balice's 2007 and 2008 income tax assessments to judgment (Counts I and VI); (b) declare that Rosewater holds title to the Maple Avenue property as the Balices' nominee or alter ego (Count III); (c) in the alternative, to set aside the transfer of the Maple Avenue property from the Balices to Rosewater as a fraudulent conveyance (Count IV); and (d) hold that the United States may foreclose its federal tax liens against the Maple Avenue property (Count V).

Balice's motion (ECF No. 191), filed February 14, 2017, asks me to strike the motion for summary judgment as premature. He says he is entitled to, but has not received, further discovery in the form of "IMF data, files, records, and record-sets." (Def. Mot. & Opp. 3, ¶ 12) Balice's motion also serves as his opposition to the summary judgment motion of the United States. In broad strokes, Balice argues that disputed issues of material fact preclude summary judgment and he also seeks to attack the judgments of the Tax Court. Balice has also filed a second, tardy opposition to the United States's motion, dated June 29, 2017 (Def. 2nd Opp.). In light of his *pro se* status, I nevertheless consider it.

Defendant Amboy Bank ("Amboy"), which has a mortgage lien on the Maple Avenue property, also opposes the summary judgment motion, but only as to the status of Rosewater and the ability of the United States to foreclose on this trust-held asset (Counts III, IV, and V). (*See* ECF No. 190, filed February 7, 2017; *see also* ECF No. 119 (opposition to the United States's motion for summary judgment against Amboy)) Amboy Bank argues that the United States is time-barred from challenging the status of Rosewater and therefore

cannot foreclose on the Maple Avenue property for the purpose of satisfying the Balices' personal tax liabilities.

Since the parties filed the motions that are the subject of this Opinion, Magistrate Judge Clark and I have ruled on several ancillary motions (*See, e.g.*, ECF nos. 202, 208). Judge Clark's letter order dated May 8, 2017 (ECF no. 202) is relevant to Balice's motion to strike. By that order, Judge Clark denied three discovery motions Balice filed which sought orders to compel the United States to produce individual master file ("IMF") data and other documents. (ECF no. 202 at 1) Judge Clark held that Balice's request for IMF data was moot, as the United States represented that it had already provided all relevant data, and that, as to the other documents, Balice had failed to serve discovery requests on the United States. (*Id.* at 2)

Subsequently, during a May 16, 2017 telephone conference, Judge Clark announced that discovery had concluded. Balice conceded that his "master file" from the IRS "was the main thing that [he] really wanted" out of the discovery stage of this action. (ECF No. 204, p. 4)[4]

My most recent memorandum opinion and order, dated July 5, 2017 (ECF No. 208, hereinafter "*Balice IV*"), is also relevant. In that memorandum opinion and order, *Balice IV*, I rejected (for the third time) Balice's argument that the 2010 assessment of his 1998 tax year liability was untimely. With the aid of a timeline of events, I explained that the IRS's February 22, 2010 assessment of the Balices' 1998 taxes was timely because the six-year statute of limitations, *see* 26 U.S.C. § 6501(e)(1), began running when the Balices filed their tax return on December 20, 1999. Although February 2010 is, as Balice

---

[4]      In the teleconference, the United States responded that it *would* produce "the individual master file." (*Id.* pp. 3–5) The United States represented in its briefing on its motion for summary judgment, however, that it *had* "already produced to Balice all data from the master file that has even an arguable connection to the claims or defenses in this matter," including "44 pages of information from Balice's individual master file showing the IRS's record of all assessments, payments, credits, interest, and other calculations" relevant to the tax years at interest in this action. (Reply 2) At any rate, the IMF data seems to have been produced. (*See, e.g.*, Def. Opp. & Mot. Ex. A4 (IMF transcript); ECF No. 184, Ex. A (44 pages of IMF data))

points out, more than six years after December 1999, the six-year statute of limitations was tolled for over five years by the filing of the June 21, 2004 notice of deficiency and the intervening Tax Court proceeding. *See* 26 U.S.C. § 6503(a)(1). (*Balice IV* at 1–2)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S Ct. 2505, 91 L.Ed.2d 202 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest*

*Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).

## III. DISCUSSION

### A. Balice's Motion and Opposition

#### 1. Motion to strike

The only argument Balice makes in support of striking the United States's motion for summary judgment is that he is still entitled to discovery of IMF data. (Def. Mot. & Opp. 2–4, ¶¶ 4–16; Def 2nd Opp. 1) Balice accuses the United States of "improperly secreting and hiding" undisclosed IMF records, which Balice assumes must be exculpatory. But Balice offers no evidence or substantive argument to support his accusation or his assumption. The United States has represented, many times, that it has produced all relevant IMF data and that any further information would be irrelevant and burdensome to

produce, in light of the needs of this case. (*See* Pl. Reply 2; ECF No. 189 at 1–2; ECF No. 196 at 2.) *Cf.* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."); *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) ("The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence.").

For these reasons, Judge Clark has already denied Balice's essentially identical requests (*see* ECF nos. 182, 185, 186) and has closed discovery in this action. (*See* ECF No. 202 (denying Balice's request to compel production of additional IMF data as moot where United States represented it had already produced all relevant IMF data); ECF No. 204 (announcing close of discovery and scheduling summary judgment briefing); discussion at p. 8, *supra*.)

In *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230 (D.N.J. 2013), Judge Schneider summarized the relevant considerations in discovery disputes like this one:

> [I]t is well settled that the Federal Rules of Civil Procedure allow broad and liberal discovery.... Nonetheless, while the scope of discovery pursuant to Rule 26 is broad, it is not unlimited and may be circumscribed.... Even if discovery is relevant the Court has discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit.... The Court has broad discretion to tailor discovery narrowly to meet the needs of each case.... This rule of proportionality is intended to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry.... See also *Public Service Enterprise Group, Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 551 (D.N.J. 1990) (employing the rule of proportionality to exclude marginally relevant evidence from the scope of discovery); *Bowers v. N.C.A.A.*, C.A. No. 97-2600 (JBS), 2008 WL 1757929, at *6 (D.N.J.

Feb. 27, 2008)(exercising discretion to bar marginally
relevant evidence).

*Id.* at 232

A party's speculative need for additional evidence is not grounds for re-
opening discovery, especially where doing so would deprive the other parties of
certainty and delay resolution of the action. This relatively straightforward
matter has been pending for three years. Discovery has closed and the parties
expressly agreed to a summary judgment briefing schedule before Judge Clark.
Accordingly, Balice's motion to strike the United States's motion for summary
judgment as premature is denied.

### 2. Balice's contentions in opposition to the motion for summary judgment

In advance of analyzing the summary judgment motion of the United
States on the merits, I summarily dispose of six contentions made by Balice, all
of which lack merit and fail to raise a material dispute.

**(1)** Balice argues that the 2010 assessment of 1998 tax year liabilities
ran afoul of the statute of limitations, depriving this court of jurisdiction (Def.
Mot. & Opp. 6–7, ¶¶ ii, vi & 18; Def. 2nd Opp. 4–5); As explained in detail,
*supra* pp. 5–8, this Court has thrice rejected Balice's challenge to the
timeliness of the 2010 assessment ((1), *supra*). (*See Balice II* at 3–4; *Balice III* at
4–5; *Balice IV* 1–2) This decision marks the fourth disposition of the same
issue.

**(2)** Balice argues that the Tax Court's orders must be set aside because
the Balices never received notices of deficiency (Def. Mot. & Opp. 8, ¶ vii) The
government points out that this argument contradicts the Tax Court's finding
that the IRS "mailed [the Balices] a notice of deficiency for years 1997 and
1998 on July 21, 2004," and that "[t]hereafter, [the Balices] challenged [the
IRS's] determinations by filing a petition" in Tax Court. (Pl. Br. Ex. 2 at 2 (ECF
No. 187-2 at p.8); *see* Pl. Reply 4) The government argues that the findings of
the Tax Court are binding on the parties to this action. (Pl. Reply 4) Tax Court

determinations litigated on the merits are binding as a matter of *res judicata*. *United States v. Bottenfield*, 442 F.2d 1007, 1008 (3d Cir. 1971).

Without even wading into the applicability of preclusion doctrines, though, Balice's lack-of-service challenge is insufficient to defeat summary judgment. It is entirely implausible that Balice never received a notice of deficiency and yet challenged the IRS's assessment in Tax Court. "The notice of deficiency, sometimes called a 'ninety day' letter, is the taxpayers' 'ticket to the Tax Court' to litigate the merits of the deficiency determination, and is a jurisdictional prerequisite to a suit in that forum." *Robinson v. United States*, 920 F.2d 1157, 1158 (3d Cir. 1990) (citations omitted); 26 U.S.C. § 6213; *see also* Tax Ct. R. Prac. & Proc. 20(a) ("A case is commenced in the Court by filing a petition with the Court, inter alia, to redetermine a deficiency set forth in a notice of deficiency issued by the Commissioner . . . ."). Where the record makes clear that the Balices themselves initiated an action to challenge their 1998 tax deficiency, the only conclusion is that they initiated that action with the necessary "ticket"—their notice of deficiency.

It follows that there is no prejudice. Any procedural defect that may have existed in the IRS's service of the notice of deficiency did not deprive Balice of a full and fair opportunity to litigate the merits of his deficiency. *Cf. Freeland v. C.I.R.*, 345 F. App'x 829, 830–31 (3d Cir. 2009) ("A taxpayer at a Collection Due Process hearing can challenge the 'existence or amount of the underlying tax liability for any tax period' if the taxpayer 'did not receive any statutory notice of deficiency for such tax liability *or did not otherwise have an opportunity to dispute such tax liability.*'" (emphasis added) (quoting 26 U.S.C. § 6330(c)(2)(B))); *Robinson v. United States*, 920 F.2d 1157, 1161 (3d Cir. 1990) (determining that district court had jurisdiction to hear challenge to IRS lien where "the IRS's failure to send a notice of deficiency denied plaintiffs an opportunity to litigate the merits of the alleged deficiency in the Tax Court."). Accordingly, Balice's second challenge fails.

**(3)** Balice argues that the IRS incorrectly calculated the balance due on the Balices' tax deficiencies and has not accounted for "funds taken in multiple levy actions." (Def. Mot. & Opp. 8–11, ¶¶ ix, xi, xiii; Def. 2nd Opp. 3) Directing the Court to a line on an exhibited "Account Transcript" (*see* Def. 2nd Opp. 3 & Ex. A) listing "-$76,586.40" as the "write-off balance due", Balice contends that the United States has fraudulently concealed the fact that Balice's balance for the 1998 tax year is actually zero. (Def. 2nd Opp. 3) The transcript to which Balice refers is a printout of an electronic list of internal IRS accounting actions. The amount of $76,586.40, surely related to the IRS's February 22, 2010 assessment of additional income taxes due for 1998 (*see* Am. Compl. ¶ 17 (showing Feb. 22, 2010 assessment of $76,586 for the 1998 tax year)), appears to be subtracted as a "Transfer out" action, then added as a "Transfer-in" action, then subtracted again with the description "Write-off balance due". The subtraction-addition-subtraction sequence is admittedly confusing but the list appears to be incomplete and the "write-off balance due" entry appears to have been made in error, and has since been corrected.[5] At any rate, Balice offers no evidence to substantiate his interpretation that a negative "write-off balance due" absolves him of all liability.

This is not all a big misunderstanding. Weighing against Balice's unsupported interpretation is a nearly eight-year history of IRS records and Tax Court documents establishing and substantiating Balice's deficiencies for the 1998, 2007, and 2008 tax years. (Pl. Br. Exs. B–C, E–F, M; Pl. SUF ¶¶ 1–10; *see generally* MacGillivray Decl.) These records leave little room for doubt that Balice owes $60,179.68, not $0, in deficient income taxes, penalties, and interest for 1998 (Pl. SUF ¶¶ 2–5; Pl. Br. Exs. B–C (Tax Court Memorandum, Order and Decision granting Commissioner of IRS summary judgment on Balices' 1997 and 1998 tax deficiencies; MacGillivray Decl. ¶¶ 6–10 & Ex. 1; ECF No. 184-1); and $124,030.68 for the 2007 and 2008 tax years (as of

---

5    *Cf.* ECF No. 137 Ex. A (2016 "Account Transcript" showing subtraction and addition of $76,586 but no second subtraction); MacGillivray Decl. Ex. 1 (same).

January 27, 2017) (*see* MacGillivray Decl. ¶¶ 11–13 & Ex. 1). *See Bottenfield*, 442 F.2d 1007 (Tax Court's determinations of liabilities are final, binding, and *res judicata* in later actions); *see also Freck v. I.R.S.*, 37 F.3d 986, 992 n.8 (3d Cir. 1994) ("Assessments are generally presumed valid and establish a *prima facie* case of liability against a taxpayer . . . ."); *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir. 1971) ("Once the tax is assessed a rebuttable presumption arises based, in part, on the probability of its correctness . . . [and] upon considerations of public policy.").

(4) Balice argues that the balance due for tax years 2007 and 2008 is incorrect because the IRS impermissibly based the Balices' income on bank deposits, and that the United States has also failed to establish a *prima facie* case of the existence of Balice's tax liabilities (Def. Mot. & Opp. 9, ¶ x) The IRS, however, is authorized to estimate individuals' tax liability as long as the method used is reasonable. *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 243, 122 S. Ct. 2117, 2122 (2002) (collecting cases upholding IRS's use of various means to extrapolate and estimate income taxes owed). "Deposits in a taxpayer's bank account are *prima facie* evidence of income, and the taxpayer bears the burden of showing that the deposits were not taxable income but were derived from a nontaxable source." *Welch v. C.I.R.*, 204 F.3d 1228, 1230 (9th Cir. 2000); *see also Reynoso v. Comm'r of Internal Revenue*, 112 T.C.M. (CCH) 400 (T.C. 2016) ("The Commissioner often uses bank-deposits analyses to reconstruct taxpayers' income—and we have long approved their use."). Balice has made no showing that his bank deposits in this instance were not taxable income or that the IRS's use of them was not reasonable. *See Dodge v. C.I.R.*, 981 F.2d 350, 354 (8th Cir. 1992) ("Once the deposits were shown to be in the nature of income and to exceed what the taxpayers had reported as income, it became the taxpayers' responsibility to persuade the trier of fact that the deposits were nontaxable.").

(5) Balice argues that the Balices transferred the Maple Avenue property to Rosewater for "fair and equitable value" and without the intent to evade

liabilities (Def. Mot. & Opp. 11–12, ¶¶ xiii–xv) This argument goes to the question of whether Rosewater is an alter ego or nominee. It is, for reasons that will be explained *infra*. Balice offers absolutely no evidence that he received fair value, or any value, from Rosewater in exchange for title to the Maple Avenue property. He also offers no evidence, or even an alternative explanation, to support his claim that he did not transfer his property with the intent to evade liabilities. His wife, the other transferor party, says otherwise. Accordingly, this argument raises no disputed issues of fact and cannot overcome the United States's satisfactory evidence, discussed in Section I.A., *supra*.

(6) Finally, Balice argues that, regardless of whether material facts remain in dispute, Balice has a constitutional right to a trial by jury (Def. Mot. & Opp. 16–25, ¶ 25; Def. 2nd Opp. 6–15).[6] This amounts to a constitutional attack on summary judgment itself, a matter settled over a century ago. "Summary judgment does not violate a party's Seventh Amendment jury trial rights so long as the person having the right to the jury trial is an actual participant in the summary judgment proceeding." *In re TMI Litig.*, 193 F.3d 613, 725 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000); *see also Fidelity & Deposit Co. v. United States ex rel. Smoot*, 187 U.S. 315, 319–21, 23 S.Ct. 120 (1902) (rule authorizing judgment for a plaintiff who has filed and served affidavit setting out cause of action under contract and amount claimed due where defendant has not filed a sufficient affidavit in defense does not violate the right to a jury trial but rather "prescribes the means of making an issue").

Balice has therefore raised no issues of law or fact to defeat summary judgment.[7] To succeed on its motion, however, the government still must make

---

[6]     At certain points in Balice's brief, he characterizes this argument as a demand or motion for a jury trial. The claims are equivalent, and the result is the same.

[7]     Balice also disputes certain facts that the United States avers as background but which are immaterial to the grounds on which the United States moves for summary judgment. (*See* Def. Mot. & Opp. 6, ¶ i (claiming an assessment for tax year was performed in 2010, not in 2005); *cf.* Opp. 2 (agreeing an assessment occurred in 2010, not in 2005. *See also* Def. Mot. & Opp. 6, ¶ iii (alleging a typographical error

its positive case. It must show that summary judgment is appropriate, and this includes overcoming Amboy's challenges as to Counts V and III and/or IV.

### B. The Assessments on Balice's 1998, 2007, and 2008 Tax Liabilities Will Be Reduced to Judgment (Counts I and VI)

As I observed in Sections I.B. and III.A.2., *supra,* the Tax Court upheld the IRS's deficiency determinations concerning the Balice's income tax obligations for the 1998, 2007, and 2008 tax years. The amounts the Tax Court determined are *res judicata* in this action. *Bottenfield,* 442 F.2d at 1008. And according to the sworn declaration of IRS revenue officer Michael MacGillivray, the IRS's Integrated Data Retrieval System[8] shows that the unpaid portions of the IRS's assessments against Balice together with penalties and interest amount to $60,179.68 for the 1998 tax year and $124,030.68 for the 2007 and 2008 tax years. Amboy does not challenge these tax liabilities and, as discussed, Balice fails to introduce any contrary financial or other evidence that would raise a material dispute as to their correct calculation. Accordingly, summary judgment will be granted as to Counts I and VI.

---

without explaining its materiality); *id.* at ¶¶ iv, viii, 26 (disputing complete production of IMF data); *id.* ¶ v (concerning overpayments, which were credited and not related to the later assessments that the United States now seeks to reduce to judgment); *id.* ¶ xi (alleging a typographical error without explaining its materiality); *id.* ¶ xii (taking issue with a quote from the Third Circuit's denial of Balice's earlier appeal in this case, without explaining its materiality to this motion); *id.* ¶ xvi (alleging the legitimacy of Statewide Trust, which the Tax Court found to be a sham but is not at issue in this action)) As these challenges have no bearing on the substance of the United States's motion, I need not address them further.

Balice also argues that this Court lacks subject matter jurisdiction as to any action concerning tax liability for pre-1998 tax years because a ten-year statute of limitations has run. (*Id.* ¶ 21) I address and dispose of this statute of limitations argument in response to Amboy's opposition at Section III.C.1., *infra.*

[8]    "IDRS" is a database "the IRS uses to maintain taxpayer accounts, including the balance due for tax liabilities, payoff amounts, penalty and interest calculations, notice issuance, and credit and debit transfers within an account." (MacGillivray Decl. ¶ 3)

## C. The United States May Foreclose On the Maple Avenue Property Because Rosewater Is Balice's Nominee (Counts III and V)

I further rule that Rosewater is Balice's nominee, and that the United States may therefore foreclose on the property to satisfy Balice's personal tax obligations. I consider, and reject, Amboy's related arguments that foreclosure is barred by the statute of limitations and *res judicata*.

### 1. Rosewater's status as nominee

It is undisputed that the United States may foreclose on property subject to federal tax liens upon this court's adjudication and decree, 26 U.S.C. § 7403(a), (c), and that this foreclosure right extends to property held by a taxpayer's nominee, *see G. M. Leasing Corp. v. United States*, 429 U.S. 338, 351, 97 S. Ct. 619, 627 (1977). The United States has established many times over in this action that federal tax liens arose against the Balices upon timely assessments for the 1992, 1993, 1996, 1998, 2007, and 2008 tax years, and that these tax liens attached to the Balices' Maple Avenue property. *See* 26 U.S.C. § 6321. As discussed, the Balices received proper notice and demand for payment in accordance with 26 U.S.C. § 6303. Thereafter, they failed to satisfy the assessments and the government filed federal tax liens against the Balices and against Rosewater as nominee of Michael Balice. (*See* Pl. Br. Ex. M (Notices)). Accordingly, the United States is entitled to summary judgment on Count V and may enforce its federal tax liens through sale of the Maple Avenue property—*if* Rosewater is in fact a nominee of Balice.

In Count III, the United States asks for a finding that this is so. Because Rosewater is Balice's nominee, says the government, the Maple Avenue property, despite being held in trust, is subject to the federal government's liens for taxes owed by Balice. The government's premise is legally correct. "Where a property owner is acting as a nominee or alter ego for a taxpayer, the nominee's assets may be used to satisfy the taxpayer's outstanding tax liability." *United States v. Patras*, 909 F. Supp. 2d 400, 410 (D.N.J. 2012), *aff'd*, 544 F. App'x 137 (3d Cir. 2013). This "nominee theory is utilized to determine

whether property should be construed as belonging to the taxpayer if he/she treated and viewed the property as his/her own, in spite of the legal machinations employed to distinguish legal title to the property." *In re Richards*, 231 B.R. 571, 578 (E.D. Pa. 1999). Therefore, as the Third Circuit Court of Appeals has explained,

> [w]hen the "Government seeks to reach" real property, we must determine what rights the taxpayer has in such property to determine if it is subject to the lien. *Drye v. United States,* 528 U.S. 49, 58, 120 S. Ct. 474, 145 L.Ed.2d 466 (1999). If the property is under the control of a third party found to be the delinquent taxpayer's nominee or alter ego, it can be subject to a tax lien. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350–51, 97 S. Ct. 619, 50 L.Ed.2d 530 (1977). A third party is a taxpayer's nominee where "the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of [that] third party while actually retaining some or all of the benefits of true ownership." *Holman v. United States,* 505 F.3d 1060, 1065 (10th Cir.2007); *see also Fourth Inv. LP v. United States,* 720 F.3d 1058, 1066 & n. 3 (9th Cir.2013). We initially look to state law to determine the taxpayer's ownership interest in the property and whether the title holder is merely a nominee. *See Drye,* 528 U.S. at 58, 120 S. Ct. 474. If the taxpayer has a property interest under state law, then federal law determines whether that property interest is subject to a federal tax lien. *Id.*

*United States v. Patras,* 544 F. App'x 137, 140–41 (3d Cir. 2013) (footnotes omitted);[9] *see also Balice I* at *3 ("While state law governs the parties'

---

[9]     In *Griffiths v. Helvering*, the U.S. Supreme Court described certain principles motivating this theory:

> We cannot too often reiterate that 'taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed-the actual benefit for which the tax is paid.' *Corliss v. Bowers*, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. And it makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, . . . Taxes cannot be escaped 'by anticipatory arrangements and contracts however skillfully

underlying property rights, federal law governs the priority between a federal tax lien and a competing lien.").

Under New Jersey law, the following factors are relevant in determining whether a person or entity to whom property has been transferred is a taxpayer's nominee: (1) whether adequate consideration was paid for the transferred property; (2) whether the transfer occurred in anticipation of a lawsuit or other liabilities; (3) the relationship between the taxpayer and transferee; (4) whether the parties failed to record the conveyance; (5) whether the property remained in the taxpayer's possession; and (6) whether the taxpayer continued to enjoy the property's benefits. *See Patras*, 909 F. Supp. 2d at 410 (D.N.J. 2012) (listing these factors and noting that the standard is the same under federal and state law); *Jugan v. Friedman*, 275 N.J. Super. 556, 570, 646 A.2d 1112, 1119 (App. Div. 1994), *abrogated on other grounds by Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 876 A.2d 253 (2005); *Coles v. Osback*, 22 N.J. Super. 358, 366, 92 A.2d 35, 39 (App. Div. 1952); *see also Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir. 1989), *as amended on denial of reh'g* (Sept. 29, 1989).

Here, the government's evidence establishes that five out of six factors support the nominee theory. (*See* Section I.A., *supra*) The exception is factor four; failure to record a conveyance. The Balices did record a quitclaim deed conveying the Maple Avenue property to Rosewater. (*Id.*) Nevertheless, considering the substantial, undisputed evidence supporting the other five factors, factor four cannot be dispositive. The Third Circuit and its constituent courts have arrived at the same conclusion when faced with this balance of factors. *See, e.g., United States v. Patras*, 909 F. Supp. 2d at 411 ("Although the conveyance to [the nominee] was recorded, this factor is not dispositive given the substantial evidence supporting the other factors."), *aff'd*, 544 F. App'x

---

devised by which the fruits are attributed to a different tree from that on which they grew.' *Lucas v. Earl*, i81 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731.

308 U.S. 355, 357–58, 60 S. Ct. 277, 278–79 (1939).

137, 142 (3d Cir. 2013) ("[A]lthough the transfer was recorded, this factor alone is not dispositive."); *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999) (explaining no one factor in the nominee theory is determinative and finding that transferee was taxpayer's nominee where the only non-supporting factor was recordation of a deed). Accordingly, I find the evidence overwhelming and rule that there is no genuine, material issue of fact that Rosewater is Balice's nominee.

### 2. *Amboy's Statute of Limitations Argument*

But wait, says Amboy; none of this matters, because the government waited too long to assert its nominee theory. Amboy contends that 28 U.S.C. § 2462[10] (which sets a five-year statute of limitations on enforcing "any civil fine, penalty or forfeiture"), rather than 26 U.S.C. § 6502 (which sets a ten-year statute of limitations on the collection of taxes from the time the taxes are assessed) applies here. That is so, says Amboy, because the government's nominee/alter ego claims "are not 'assessments.'" (Amboy Ltr. 2). The five-year period under 28 U.S.C. § 2462, says Amboy, began running when the United States's claim against the Maple Avenue property accrued, which (Amboy says) was when the government was put on notice that the Maple Avenue property had been transferred to Rosewater.

Because the Balices transferred the Maple Avenue property to Rosewater by a deed recorded on September 9, 1994, and because New Jersey operates

---

[10]     Amboy's letter twice refers to "11 U.S.C.A. § 2462." Amboy surely meant to cite 28 U.S.C. § 2462, which provides in full:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

under a "race-notice" regime,[11] Amboy concludes that the United States's claim accrued on September 9, 1994. Alternatively, says Amboy, the United States had actual notice of the transfer (and thus its claim may have accrued) when it filed a Notice of Federal Tax Lien against the Maple Avenue property on July 11, 2005. (Amboy Ltr. 1) Amboy maintains that whether the date of constructive notice (1994) or actual notice (2005) applies, the clock had run by the time the United States brought this action in 2014.

Amboy cites no case law to support its assertion that the government's nominee theory constitutes an independent claim against Rosewater, or that 28 U.S.C. § 2462 rather than 26 U.S.C. § 6502 applies here. What case law does exist overwhelmingly suggests that where a tax levy or collection of judgment would be timely as against a taxpayer, a tax levy or collection of judgment against the taxpayer's nominee is also timely; no separate claim need be asserted against the nominee. For these purposes, the taxpayer and his nominee are considered one and the same; this is not an independent cause of action, but simply an exercise in tracking the taxpayer's assets. *See, e.g., United States v. Scherping*, 187 F.3d 796, 800–801 (8th Cir. 1999) (where action to collect judgment against taxpayer is timely filed, statute of limitations does not reset with respect to later-joined alter egos of taxpayer against whom judgment is sought); *Hall v. United States*, 403 F.2d 344, 347 (5th Cir. 1968)

---

[11]     New Jersey is considered a 'race-notice' jurisdiction, which means that as between two competing parties the interest of the party who first records the instrument will prevail so long as that party had no actual knowledge of the other party's previously-acquired interest. *Palamarg Realty Co. v. Rehac*, 80 *N.J.* 446, 454, 404 *A.2d* 21 (1979). As a corollary to that rule, parties are generally charged with constructive notice of instruments that are properly recorded. *Friendship Manor, Inc. v. Greiman*, 244 *N.J.Super.* 104, 108, 581 *A.2d* 893 (App.Div.1990) ("In the context of the race notice statute, constructive notice arises from the obligation of a claimant of a property interest to make reasonable and diligent inquiry as to existing claims or rights in and to real estate."), *certif. denied*, 126 *N.J.* 321, 598 *A.2d* 881 (1991). *Cox v. RKA Corp.*, 164 N.J. 487, 496, 753 A.2d 1112, 1117 (2000).

(suit against transferees not to "collect taxes" but to "follow assets, fraudulently acquired, in order to collect a judgment against the taxpayer . . . is outside the ambit of [26 U.S.C.] § 6502."); *In re Moore*, 379 B.R. 284, 299 (Bankr. N.D. Tex. 2007) (applying statute of limitations for enforcing a judgment rather than statute of limitations for underlying cause of action in creditor's pursuit of debtor's alter ego to collect judgment). *Cf. United States v. Perrina*, 877 F. Supp. 215, 218 (D.N.J. 1994) (government's timely assessment against taxpayer for unpaid employment taxes enabled it to take advantage of ten-year statute of limitations for commencing litigation to collect on tax levy against property fraudulently conveyed to taxpayer's spouse; no separate assessment against spouse was necessary); *Fellenz v. Lombard Inv. Corp.*, 400 F. Supp. 2d 681, 684 (D.N.J. 2005) ("[T]he procedural safeguards in 26 U.S.C. § 6330 are inapplicable to a civil suit taken to enforce tax liens against properties that allegedly had been fraudulently conveyed to third parties or held by the taxpayers nominees or alter egos.").

Any distinction between Balice and Rosewater, as I have already found, is a fiction; the statute does not start running again, any more than it would because the taxpayer shifted his money among different bank accounts. The only question before me for statute of limitations purposes is whether the United States timely sought to foreclose on the Maple Avenue property. As the government correctly submits, 26 U.S.C. §§ 6321, 6322 and 6502, provisions of the Internal Revenue Code, set the timeline here.[12] Under these provisions:

- When a person fails to pay a federal tax, a federal tax lien arises "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321;

- A lien imposed by Section 6321 "arise[s] at the time the assessment is made" and "continue[s] until the liability for the amount . . . (or a

---

[12]    The five-year statute of limitations provided for in 28 U.S.C. § 2462 does not apply here. Section 2462, a catchall, applies only "[e]xcept as otherwise provided by Act of Congress." The Internal Revenue Code constitutes such an act that sets a specific statute of limitations for collection of taxes after assessment. *See* 26 U.S.C. § 6502.

judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C § 6322; and

- A levy or court proceeding to collect taxes must commence within ten years after the assessment of a tax, but "[i]f a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable." 26 U.S.C. § 6502.

In this case, the United States seeks to foreclose upon the Maple Avenue property to satisfy three groups of tax liens: (1) tax liens arising from 1994 through 2005 assessments of taxes owed for the 1992, 1993, 1996, and 2001 tax years that were reduced to judgment against Balice on June 18, 2008, (see ECF No. 1, Ex. B (*United States v. Balice*, No. 2:07-cv-5326 (D.N.J.))); (2) tax liens arising from 1994 through 2006 assessments of taxes owed for the 1992, 1993, 1996, and 2001 tax years that were reduced to judgment against Marion Balice on April 23, 2012, (see ECF No. 1, Ex. C (*United States v. Balice*, No. 2:11-cv-00130 (D.N.J.))); and (3) tax liens arising from the assessments for the 1998, 2007, and 2008 tax years that, by order accompanying this opinion, I now reduce to judgment against Balice, *see supra* Section III.B.

Because the United States has or will have (by the order accompanying this opinion) obtained judgment liens arising from the Balice's tax lien liability as to all tax liens, and because judgment liens are "effective, unless satisfied, for a period of 20 years," 28 U.S.C. § 3201(c), there is no issue as to the current enforceability of these three groups of liens.[13]

---

[13]        A judgment in a civil action shall create a lien on all real property of a judgment debtor on filing a certified copy of the abstract of the judgment in the manner in which a notice of tax lien would be filed under paragraphs (1) and (2) of section 6323(f) of the Internal Revenue Code of 1986. A lien created under this paragraph is for the amount necessary to satisfy the judgment, including costs and interest.

28 U.S.C. § 3201(a). Amboy does not dispute that the United States has met the filing requirements necessary to create valid judgment liens. *See* Pl. Ex. M (notices of federal tax liens against the Balices and Rosewater).

24

As for the timeliness of the government's action to collect taxes—*i.e.,* the foreclosure claim now before me—the ten-year statute of limitations under 26 U.S.C. § 6502 applies. Amboy argues that the IRS's assessments made in 1994 and 2003 (corresponding to taxes owed for 1992, 1993, and 1996) occurred over ten years ago, and that the United States is thus time-barred from asserting a foreclosure claim based on those liens. (Amboy Ltr. 3) Amboy fails to appreciate that the time to collect taxes is extended "[i]f a timely proceeding in court for the collection of a tax is commenced . . . ." 26 U.S.C. § 6502(a). *This* foreclosure proceeding, it is true, commenced in 2014, more than ten years after 1994 and 2003. But this is not the only relevant proceeding. The courts have interpreted "proceeding in court" in § 6502(a) to include suits to reduce tax assessments to judgment. *See Markham v. Fay,* 74 F.3d 1347, 1353 (1st Cir. 1996) ("A lien becomes unenforceable by lapse of time upon expiration of the six-year statute of limitations for collection, but if the government brings suit within six years from assessment and receives a judgment in its favor, the life of the lien is extended indefinitely.");[14] *Moyer v. Mathas,* 458 F.2d 431, 434 (5th Cir. 1972) ("[T]he limitation provisions of section 6502(a) are satisfied if the government institutes, within six years after the assessment of the tax, a suit for an in personam judgment against the taxpayer."); *accord United States v. Mandel,* 377 F. Supp. 1274, 1277 (S.D. Fla. 1974); *see also United States v. Ettelson,* 159 F.2d 193, 196 (7th Cir. 1947) (filing of claim in probate court was a proceeding in court sufficient to stop the running of the statute of limitations prescribed in the predecessor statute to §6502); *United States v. Mattox,* No. 12-C-1291, 2014 WL 67325, at *3 (E.D. Wis. Jan. 8, 2014) (following the rule of *Ettelson* and finding no cases that cast doubt on its continued validity); *cf. United States v. Silverman,* 621 F.2d 961, 964 (9th Cir. 1980) (filing of claim against an estate subject to probate did not count as a "proceeding in court" for

---

[14]     Prior to 1990, 26 U.S.C. § 6502 provided for a six-year statute of limitations. The statute was amended to extend to ten years in 1990. 26 U.S.C. § 6502(a); Omnibus Budget Reconciliation Act of 1990, Pub.L. 101–508, sec. 11317(a), 104 Stat. 1388–458. The pre-1990 version of the statute applied in *Markham.*

purposes of § 6502 in light of the nature, function, and effect of the filing under California probate law).

The 1994 and 2003 assessments were reduced to judgment, *via* "proceedings in court," in June 2008 and 2012. Those proceedings were timely brought within the ten-year statute of limitations.[15] It follows that this foreclosure action was not subject to the ten-year statute of limitations, which had already been satisfied. Accordingly, the government's Count V foreclosure claim is timely.

### 3. Amboy's Res Judicata Argument

Amboy also suggests in the alternative that the government is precluded from moving against Rosewater's property now because it failed to assert claims against Rosewater in the 2007 and 2011 actions against the Balices. (Amboy Ltr 2–3) As the United States observes (Pl. Reply 9), I have already rejected what amounts to the same argument. *See* Section I.C., *supra*.

---

[15] There are additional complications, however. Language in the cases cited *supra* suggests that the intervening "proceeding in court" must have been filed within ten years of the assessment to stop the running of the statute of limitations. If this were so, the actions which produced the 2008 and 2012 judgments (filed in 2007 and 2011) would seem to have been untimely, and therefore would not have stopped the limitations clock. But the record of the 2011 action dispels this concern.

In that 2011 action, Judge Chesler rejected Marion Balice's statute of limitations defense, granting summary judgment to the government, and the Court of Appeals affirmed. *See United States v. Balice*, 11-cv-00130 (D.N.J.), ECF Nos. 45 & 46 (*See* ECF No. 1, Ex. B in this action). The Third Circuit, affirming, explained that Balice timely filed a collection-due-process ("CDP") hearing with respect to tax liabilities for the 1993 tax year (corresponding to the 1994 assessments) and also timely filed an instalment agreement request. Both of those filings suspended the statute of limitations, as did two bankruptcy filings. *See id.*, ECF No. 52-2 (Opinion, 3d Cir. Nov. 29, 2012) at 5–6 & n.3. Those statutory suspensions, taken together, rendered the 2011 action timely (pursuant to 26 U.S.C. §§ 6330(e), 6331(k)&(i), and 6503(b) & (h)). *Id.*

As for the 2007 action, Balice did not raise a statute of limitations defense. *See United States v. Balice*, No. 2:07-cv-5326 (D.N.J.), ECF Nos. 4, 7, 10. The statute of limitations may be waived, however, and I see no basis to question the timeliness of that 2007 action now. At any rate, the Third Circuit's opinion affirming summary judgment in the 2011 action suggests that certain if not all of the same extension triggers would likely have applied to extend the statute of limitations with respect to the 2007 action.

To reiterate, in *Balice I*, I held that the 2008 and 2012 judgments arising out of the 2007 and 2011 actions against Michael and Marion Balice do not have preclusive effect because the issues and relief sought in the action *sub judice* are not the same; "If Balice's *res judicata* argument were correct, no creditor could ever sue for foreclosure based on a prior judgment. . . . To say that a prior judgment precludes foreclosure would in many cases defeat the very purpose of a foreclosure action." *Balice I* at *10. I see no appreciable difference for present purposes between Amboy's argument here—that the prior actions bar the United States from foreclosing on the Maple Avenue property under a nominee/alter ego theory—and Balice's rejected argument in *Balice I*— that the prior actions bar this action entirely.

The undisputed evidence shows that Rosewater *is* Balice—*i.e.,* that it is Balice's nominee with respect to the Maple Avenue property. Amboy's timeliness and *res judicata* challenges to this finding lack merit. Accordingly, the government is entitled to judgment on Counts III and V and the Court will order the sale of the Maple Avenue property to satisfy the tax liens against Balice.[16]

---

[16]    Because the government is entitled to reach the Maple Avenue property under a nominee theory, I need not reach its argument in the alternative—that the Balices' conveyance of the Maple Avenue property to Rosewater was a fraudulent conveyance. (*See* Pl. Br. 9–10) Nevertheless, the evidence leaves no doubt that a fraudulent conveyance did occur and thus, had the government's nominee theory failed, I would set aside the conveyance to Rosewater as fraudulent, thus permitting the government to foreclose on the Maple Avenue property as legally owned by Balice. *See, e.g., United States v. Freeman*, No. CIV. A. 92-255, 1993 WL 179115, at *5 (D.N.J. Mar. 3, 1993), *aff'd*, 16 F.3d 406 (3d Cir. 1993).

The Balices put the Maple Avenue property "beyond the reach of creditors which would have been available to them" and several "badges of fraud" indicate that they did so with the "intent to defraud, delay, or hinder" the government. *United Ass'n v. Schmidt*, No. CIV.A. 10-1815 RBK J, 2011 WL 766057, at *7 (D.N.J. Feb. 24, 2011) (internal quotation marks and citations omitted) (applying New Jersey's Uniform Fraudulent Transfer Act, N.J. Stat. 25:2-20 *et seq.*); *see* N.J. Stat. 25:2-26 (badges of fraud include, *inter alia*, whether the transfer was to an insider, whether the debtor remained in possession of control of the property, whether the debtor received reasonable consideration for the transfer; and whether the debtor incurred substantial

## VI. CONCLUSION

For the foregoing reasons, Balice's motion to strike the motion of the United States for summary judgment as premature is **DENIED**; and the motion of the United States for summary judgment on Counts I, III, V, and VI is **GRANTED**.

The parameters of priority of liens were set by my opinion in *Balice I*. As noted above, the amount of the priority based on Amboy's HELOC has not been established. *See* p. 5, *supra*. I therefore authorize the filing of short summary judgment motions, with appropriate documentation, on the issue of the dollar amount of Amboy's priority. I note that by doing so, Amboy will not be deemed to have waived its position as to the issues of law decided in *Balice I*.

DATED: August 9, 2017

Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**

---

debt before or shortly after the transfer); *cf.* Section I.A., *supra*; *see also Freeman*, *supra*, at *4–5.

Amboy's argument that the government's fraudulent conveyance claim is untimely under New Jersey's statute of limitations also fails as a matter of law. *See United States v. Summerlin*, 310 U.S. 414, 60 S. Ct. 1019 (1940); *see also United States v. Goldston*, No. 06-CV-02153-PAB-KLM, 2009 WL 2982867, at *2 (D. Colo. Sept. 17, 2009) ("[E]ven if the Colorado statute of limitations did apply to plaintiff's nominee and alter ego theory, the statute of limitations would be preempted by 26 U.S.C. § 6502 and the Supremacy Clause."); *cf. In re Krause*, 386 B.R. 785, 833–34 (Bankr. D. Kan. 2008) ("[W]hether a party can sustain a fraudulent conveyance claim at present is a different question than whether it can be shown that the ancient conveyances were fraudulent when they occurred. [Where] the alleged fraudulent conveyances relate to the question of whether [a party is the debtor's] nominees, [] statute of limitations issues . . . are nothing but red herrings."), *aff'd*, No. 08-1132, 2009 WL 5064348 (D. Kan. Dec. 16, 2009), *aff'd*, 637 F.3d 1160, 1166 (10th Cir. 2011) ("[W]e hold, that the terms "property" and "rights to property" for purposes of federal law under § 6321 embrace not only rights or interest with exchangeable value that the taxpayer holds formal legal title to, but also those that the taxpayer (as here) is found under state law to have fraudulently conveyed to a nominee.").

## VI. CONCLUSION

For the foregoing reasons, Balice's motion to strike the motion of the United States for summary judgment as premature is **DENIED**; and the motion of the United States for summary judgment on Counts I, III, V, and VI is **GRANTED**.

The parameters of priority of liens were set by my opinion in *Balice I*. As noted above, the amount of the priority based on Amboy's HELOC has not been established. *See* p. 5, *supra*. I therefore authorize the filing of short summary judgment motions, with appropriate documentation, on the issue of the dollar amount of Amboy's priority. I note that by doing so, Amboy will not be deemed to have waived its position as to the issues of law decided in *Balice I*.

DATED: August 9, 2017

Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**

---

debt before or shortly after the transfer); *cf.* Section I.A., *supra*; *see also Freeman*, *supra*, at *4–5.

Amboy's argument that the government's fraudulent conveyance claim is untimely under New Jersey's statute of limitations also fails as a matter of law. *See United States v. Summerlin*, 310 U.S. 414, 60 S. Ct. 1019 (1940); *see also United States v. Goldston*, No. 06-CV-02153-PAB-KLM, 2009 WL 2982867, at *2 (D. Colo. Sept. 17, 2009) ("[E]ven if the Colorado statute of limitations did apply to plaintiff's nominee and alter ego theory, the statute of limitations would be preempted by 26 U.S.C. § 6502 and the Supremacy Clause."); *cf. In re Krause*, 386 B.R. 785, 833–34 (Bankr. D. Kan. 2008) ("[W]hether a party can sustain a fraudulent conveyance claim at present is a different question than whether it can be shown that the ancient conveyances were fraudulent when they occurred. [Where] the alleged fraudulent conveyances relate to the question of whether [a party is the debtor's] nominees, [] statute of limitations issues . . . are nothing but red herrings."), *aff'd*, No. 08-1132, 2009 WL 5064348 (D. Kan. Dec. 16, 2009), *aff'd*, 637 F.3d 1160, 1166 (10th Cir. 2011) ("[W]e hold, that the terms "property" and "rights to property" for purposes of federal law under § 6321 embrace not only rights or interest with exchangeable value that the taxpayer holds formal legal title to, but also those that the taxpayer (as here) is found under state law to have fraudulently conveyed to a nominee.").